**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| RED ROOF INNS, INC., <br> 7815 Walton Parkway <br> New Albany, Ohio 43054 <br><br> and <br><br> RED ROOF FRANCHISING, LLC, <br> 7815 Walton Parkway <br> New Albany, Ohio 43054 <br><br> and <br><br> RRI WEST MANAGEMENT, LLC, <br> 7815 Walton Parkway <br> New Albany, Ohio 43054 <br><br> and <br><br> RRF HOLDING COMPANY, LLC, <br> 7815 Walton Parkway <br> New Albany, Ohio 43054 <br><br>     Plaintiffs, <br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br> 175 Berkeley Street <br> Boston, MA 02117 <br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ <br><br> Judge _____ <br><br><br> **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Plaintiffs Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and RRF Holding Company, LLC, (collectively "Red Roof" or "Plaintiffs") and for their Complaint against Defendant Liberty Mutual Fire Insurance Company ("Liberty" or "Defendant"), state as follows:

**Introduction**

1. This is a claim for breach of contract and insurance bad faith, seeking monetary relief for damages exceeding $75,000 exclusive of all interest, costs, and attorney's fees.

2. This insurance coverage and bad faith action involves Liberty's bad faith refusal to defend Red Roof in eleven underlying lawsuits involving alleged human trafficking at various Red Roof hotels.

3. Over the past several years, victims of alleged sex trafficking have filed a wave of lawsuits against the hospitality industry, targeting hotel franchisors, franchisees, owners, and operators for their alleged involvement in and failure to prevent human trafficking. Like many hotel chains, Red Roof has been caught up in this wave of litigation.

4. As Red Roof's primary general liability insurer for eight years, Liberty previously agreed to defend more than 50 lawsuits against Red Roof for its alleged involvement in human trafficking and has settled the claims of more than a dozen underlying plaintiffs.

5. But after years of defending, and in some cases settling, similar lawsuits filed against Red Roof, Liberty has now decided that it will no longer do so. Liberty has arbitrarily denied coverage for Red Roof for new lawsuits—including the eleven underlying lawsuits which are the subject of this action—without any valid basis.

6. In making this recent change and pulling once-provided coverage, Liberty has placed its interests ahead of its insureds and has violated long-standing Ohio law under which it has "an absolute duty to defend an action where the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy…." *City of Sharonville v. Am. Emplrs. Ins. Co.*, 109 Ohio St. 3d 186, 847 N.E. 2d 833 (2006); *see also City of Willoughby Hills v. Cincinnati Ins.,* 9 Ohio St. 3d 177, 178–79, 459 N.E.2d 555, 557 (1984).

7. Underscoring the arbitrary and capricious nature of Liberty's refusal to provide a defense to Red Roof is Liberty's decision to defend other similarly situated insureds from similar allegations at the same time that it has abandoned Red Roof.

8. Red Roof is entitled to a declaration that Liberty has an obligation to immediately defend it in the underlying lawsuits, is entitled to an order requiring Liberty to immediately start paying Red Roof's legal fees for the defense of such lawsuits, and an award of damages (including punitive damages and attorney fees) for Liberty's bad faith denial of coverage.

**The Parties**

9. Red Roof Inns, Inc. ("Red Roof Inns") is a corporation organized under the laws of Delaware with its principal place of business in Ohio.

10. RRF Holding Company, LLC ("RRF Holding") is a citizen, for diversity purposes, of Delaware and Ohio. RRF Holding is a Delaware limited liability company who sole member is Red Roof Inns, Inc.

11. Red Roof Franchising, LLC ("Red Roof Franchising") is a citizen, for diversity purposes, of Delaware and Ohio. Red Roof Franchising is a Delaware limited liability company whose sole member is RRF Holding Company, LLC.

12. RRI West Management, LLC ("RRI West Management") is a citizen, for diversity purposes, of Texas, Florida, Monaco, and Singapore. RRI West Management is a Delaware limited liability company whose sole member is Westmont Investments, LLC. Westmont Investments, LLC in turn has two members: an individual who maintains his permanent residence and is domiciled in Texas, and a Trust. The Trust has two trustees who are domiciled in Texas and in Florida. The Trust's members and beneficiaries are traditional family trusts and similar planning vehicles that were created by and for the benefit of individuals who maintain their permanent

3

residences and are domiciled in Texas, Monaco, and Singapore. The trustees and administrators of those entities are domiciled in Texas, Florida, or in countries outside the United States.

13. Liberty is a Wisconsin corporation with its principal place of business in Massachusetts.

**Jurisdiction and Venue**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity between the parties.

15. Liberty is subject to personal jurisdiction in this Court because: (i) the insurance policies at issue were applied for, negotiated, paid for, and delivered in Franklin County, Ohio so that Liberty has transacted business in Ohio; (ii) Liberty contracted to insure Red Roof's property and interests in Ohio; (iii) Liberty caused tortious injury in Ohio by an act or omission in Ohio; (iv) Liberty regularly does or solicits business in Ohio; (v) derives substantial revenue from services rendered in Ohio; and (vi) caused tortious injury in Ohio by an act or omission outside of Ohio.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Franklin County, Ohio, which is located in the Southern District, Eastern Division of this Court.

**General Allegations**

17. Red Roof is an economy hotel chain founded in Columbus, Ohio in 1973 and has been headquartered in Franklin County for the past 50 years.

18. Red Roof has more than 700 properties in the U.S. and Japan, operating under four brands, including 45 properties in Ohio.

**The Liberty Insurance Policies**

19. Liberty issued eight consecutive commercial general liability policies to Red Roof including the following six policies issued between July 1, 2011 and July 1, 2016 (collectively, the "Liberty Policies"):

   a. Policy No. TB2-641-437760-071, with a policy period of July 1, 2011 to July 1, 2012 ("2011 Policy"), a true and accurate copy of which is Exhibit A;

   b. Policy No. TB2-641-437760-072, with a policy period of July 1, 2012 to July 1, 2013 ("2012 Policy"), a true and accurate copy of which is Exhibit B;

   c. Policy No. TB2-641-437760-073, with a policy period of July 1, 2013 to July 1, 2014 ("2013 Policy"), a true and accurate copy of which is Exhibit C;

   d. Policy No. TB2-641-437760-074, with a policy period of July 1, 2014 to July 1, 2015 ("2014 Policy"), a true and accurate copy of which is Exhibit D;

   e. Policy No. TB2-641-437760-075, with a policy period of July 1, 2015 to July 1, 2016 ("2015 Policy"), a true and accurate copy of which is Exhibit E; and

   f. Policy No. TB2-641-437760-076, with a policy period of July 1, 2016 to July 1, 2017 ("2016 Policy"), a true and accurate copy of which is Exhibit F.

20. Red Roof Inns, RRF Holding, Red Roof Franchising, and RRI West Management are Named Insureds under the Liberty Policies.

21. The Liberty Policies contain two liability coverage parts relevant to this action: (i) Coverage A, Bodily Injury and Property Damage Liability; and (ii) Coverage B, Personal and Advertising Injury Liability.

22. As to Coverage A, the 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) provides, in pertinent part:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   b. This insurance applies to "bodily injury" or "property damage" only if:

      1) The "bodily injury" or "property damage" is caused by an "occurrence" . . .

      2) The "bodily injury" or "property damage" occurs during the policy period.

23. The 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) defines "bodily injury" to mean:

    a. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

    b. Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a above. Mental anguish means any type of mental or emotional illness or distress.

24. The 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25. As to Coverage B, the 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) provides, in relevant part:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance

applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed . . . during the policy period.

26. The 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) defines "personal and advertising injury" to mean injury, including consequential "bodily injury," arising out of, in pertinent part:

a. False arrest, detention or imprisonment.

27. As for "personal and advertising injury," the 2011 Liberty Policy (which is identical to or materially similar to the other Liberty Policies) defines "occurrence" to mean "an offense or series of related offenses."

## The Underlying Lawsuits and Liberty's Refusal to Defend

28. Among the lawsuits filed against Red Roof are eleven recently filed suits in the United States District Court for the Southern District of Ohio and the United States District Court for the Eastern District of California (collectively, the "Underlying Lawsuits"). These include:

a. *A.A.G. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:25-cv-82 (the "*A.A.G.* Lawsuit"). A true and accurate copy of the First Amended Complaint from the *A.A.G.* Lawsuit is attached and incorporated herein as Exhibit G.

b. *B.W. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-4058 (the "*B.W.* Lawsuit"). A true and accurate copy of the Complaint from the *B.W.* Lawsuit is attached and incorporated herein as Exhibit H.

c. *D.W. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-3998 (the "*D.W.* Lawsuit"). A true and accurate copy of the Complaint from the *D.W.* Lawsuit is attached and incorporated herein as Exhibit I.

d. *H.M.L. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-3919 (the "*H.M.L.* Lawsuit"). A true and accurate copy of the Complaint from the *H.M.L.* Lawsuit is attached and incorporated herein as Exhibit J.

e. *J.K.W. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:25-cv-83 (the "*J.K.W.* Lawsuit"). A true and accurate copy of the Complaint from the *J.K.W.* Lawsuit is attached and incorporated herein as Exhibit K.

f. *J.M. v. Red Roof Franchising, LLC , et al.*, in the United States District Court for the Eastern District of California, Civil Action No. 2:24-cv-3384 (the "*J.M.* Lawsuit"). A true and accurate copy of the Complaint from the *J.M.* Lawsuit is attached and incorporated herein as Exhibit L.

g. *Jane Doe v. Wyndham Hotel & Resorts, Inc., et al.*, in the United States District Court for the Eastern District of California, Civil Action No. 1:25-cv-26 (the "*Jane Doe* Lawsuit"). A true and accurate copy of the Complaint from the *Jane Doe* Lawsuit is attached and incorporated herein as Exhibit M.

    h. *K.R.A. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-4316 (the "*K.R.A.* Lawsuit"). A true and accurate copy of the Complaint from the *K.R.A.* Lawsuit is attached and incorporated herein as Exhibit N.

    i. *R.R.G. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-4211 (the "*R.R.G.* Lawsuit"). A true and accurate copy of the Complaint from the *R.R.G.* Lawsuit is attached and incorporated herein as Exhibit O.

    j. *T.D.W. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-3991 (the "*T.D.W.* Lawsuit"). A true and accurate copy of the Complaint from the *T.D.W.* Lawsuit is attached and incorporated herein as Exhibit P.

    k. *Z.D.Q. v. Red Roof Inns, Inc., et al.*, in the United States District Court for the Southern District of Ohio, Civil Action No. 2:24-cv-4320 (the "*Z.D.Q.* Lawsuit"). A true and accurate copy of the Complaint from the *Z.D.Q.* Lawsuit is attached and incorporated herein as Exhibit Q.

29. The plaintiffs in the Underlying Lawsuits allege that they were trafficked for sex at various hotels, including Red Roof properties between 2008 and 2016.

30. The plaintiffs in the Underlying Lawsuits do not allege that their traffickers were Red Roof's employees or agents, or that they were otherwise acting at the direction of Red Roof.

31. The plaintiffs in the Underlying Lawsuits allege that Red Roof is liable for statutory violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA").

32. The TVPRA claims asserted in the Underlying Lawsuits do not require a showing that Red Roof had any intent to injure the plaintiffs.

33. The Underlying Lawsuits allege one or more "occurrences" under Coverage A for "bodily injury" during the Liberty Policies' policy periods.

34. No policy exclusion under Coverage A applies to the Underlying Lawsuits.

35. False imprisonment occurs when a person confines another intentionally, without privilege, and without her (or his) consent within a limited area for any appreciable time, however short.

36. The Underlying Lawsuits at least arguably or potentially allege that a person other than Red Roof, and not acting under the direction of Red Roof, falsely imprisoned the plaintiffs in the Underlying Lawsuits at Red Roof hotels, for which Red Roof is liable.

37. The plaintiffs in the Underlying Lawsuits allege that their injuries arose out of Red Roof's business.

38. No policy exclusion bars coverage under Coverage B of the Liberty Policies for the allegations in the Underlying Lawsuits.

39. Liberty has a duty to defend Red Roof in the Underlying Lawsuits under Ohio law. *See City of Willoughby Hills v. Cincinnati Ins.,* 9 Ohio St. 3d 177, 178–79, 459 N.E.2d 555, 557 (1984).

40. Liberty's duty to defend is not fairly debatable based on the facts or status of the law.

41. Liberty has denied coverage to Red Roof for each of the Underlying Lawsuits and has refused to provide a defense to Red Roof in those suits. Liberty's denial letters are attached hereto as follows:

   a. March 11, 2025 denial on the *A.A.G.* Lawsuit is attached as Exhibit R.

   b. January 2, 2025 denial on the *B.W.* Lawsuit is attached as Exhibit S.

   c. December 19, 2024 denial on the *D.W.* Lawsuit is attached as Exhibit T.

   d. December 19, 2024 denial on the *H.M.L.* Lawsuit is attached as Exhibit U.

   e. March 11, 2025 denial on the *J.K.W.* Lawsuit is attached as Exhibit V.

   f. February 21, 2025 denial on the *J.M.* Lawsuit is attached as Exhibit W.

   g. February 21, 2025 denial on the *Jane Doe* Lawsuit is attached as Exhibit X.

   h. March 11, 2025 denial on the *K.R.A.* Lawsuit is attached as Exhibit Y.

   i. January 10, 2025 denial on the *R.R.G.* Lawsuit is attached as Exhibit Z.

   j. December 19, 2024 denial on the *T.D.W.* Lawsuit is attached as Exhibit AA.

   k. February 21, 2025 denial on the *Z.D.Q.* Lawsuit is attached as Exhibit AB.

42. Liberty's denials of coverage are based on it unjustifiably ignoring many of the allegations of the Underlying Lawsuits and unjustifiably mischaracterizing other allegations as alleging Red Roof's knowing and intentional participation in the plaintiffs' trafficking.

43. Liberty has improperly asserted that no coverage exists under the Liberty Policies and refused to provide a defense to Red Roof in the Underlying Lawsuits.

44. Liberty's denials of coverage in the Underlying Lawsuits are arbitrary and capricious as shown by its agreement to defend dozens of similar lawsuits brought against the same or similarly situated insureds alleging similar conduct and causes of action over the past several years.

45. Upon information and belief, before and after denying coverage to Red Roof in the Underlying Lawsuits, Liberty has agreed to defend other policyholders facing nearly identical allegations under insurance policies providing substantially and/or the same coverage as the Liberty Policies.

## COUNT I

### Breach of Contract– Duty to Defend

46. Red Roof restates and reincorporates Paragraphs 1 through 45 as if fully set forth herein.

47. The Liberty Policies between Plaintiffs and Defendant are contracts.

48. Red Roof has complied with all terms and conditions precedent for coverage under the Liberty Policies.

49. Red Roof has fully performed all of its obligations under the Liberty Policies or its obligations under the Liberty Policies have been waived.

50. The Liberty Policies obligate Liberty to defend Red Roof against the allegations asserted against them in the Underlying Lawsuits.

51. As a direct and proximate result of Liberty's breaches of contract, Liberty has deprived Red Roof of the benefits of the insurance contracts, for which Red Roof has paid substantial premiums.

52. Red Roof has incurred, and will incur in the future, losses and defense costs to include reasonable attorney fees, costs, and expenses because of the Underlying Lawsuits.

53. Defendant has breached its obligation under the Liberty Policies by failing and/or refusing to accept its obligation to provide Red Roof with coverage for losses and/or to defend Red Roof in the Underlying Lawsuits.

54. As a direct and proximate result of Liberty's breaches of contract, Red Roof has incurred substantial costs, expenses, and attorney fees defending their interests from the allegations in the Underlying Lawsuits. Red Roof has sustained and will continue to sustain damages due to Liberty's breaches of contract. Defendant also is liable for all other losses that Red Roof may suffer in the future as a result of the Underlying Lawsuits, together with the costs and disbursements of this action, including but not limited to, reasonable attorney fees and pre and post-judgment interest. While the exact amount of damages requested by Red Roof will be demonstrated at trial, the current amount of Red Roof's damages easily exceed $75,000.

## COUNT II

### Declaratory Judgment – Duty to Defend

55. Plaintiffs restate and reincorporate Paragraphs 1 through 54 as if fully set forth herein.

56. As a direct result of the Underlying Lawsuits, Red Roof has incurred, and will continue to incur attorney fees, costs, and expenses that are covered losses and/or defense costs under the Liberty Policies.

57. Defendant has breached its obligations as set forth in the Liberty Policies that it sold to Red Roof, by failing to honor its obligations to cover the losses and defense costs incurred by Red Roof as a result of the Underlying Lawsuits.

58. Plaintiffs are entitled to a declaration by this Court of its rights and the obligations of Defendant under the Liberty Policies with respect to the Underlying Lawsuits.

59. By reason of the foregoing, an actual and justiciable controversy exists between Red Roof and Liberty as to each party's respective rights, obligations, and entitlements under the Liberty Policies.

60. Speedy relief is necessary to preserve Plaintiffs' rights and entitlements under the Liberty Policies, which may be otherwise impaired or lost.

61. Plaintiffs are entitled to a judgment declaring that Liberty has an obligation to defend Red Roof in the Underlying Lawsuits.

62. Plaintiffs are entitled to an order mandating that Liberty immediately defend Red Roof in the Underlying Lawsuits, including the advancement of defense costs as they are incurred.

63. Plaintiffs thus seek, pursuant to Ohio Revised Code § 2721.01 *et seq.*, and/or 28 U.S.C. § 2201, a judicial determination by this Court of Defendant's obligation to provide coverage under the Liberty Policies, reimburse Plaintiffs for the costs, expenses, and attorney fees that they have already expended in defending against the Underlying Lawsuits, to cover any future losses related to the Underlying Lawsuits, to defend Plaintiffs against the Underlying Lawsuits, to cover any future losses related to the Underlying Lawsuits, to defend Plaintiffs in the Underlying lawsuits, to cover any losses associated with the Underlying Lawsuits, to require Defendant to pay the full and current hourly rates Plaintiffs are incurring from its current counsel in defending the Underlying lawsuits, and any other relief afforded Plaintiffs under the Liberty Policies. Such judicial determination is necessary and appropriate at this time under the circumstances alleged.

64. Plaintiffs seek their reasonable attorney fees and costs in connection with the relief sought herein.

## COUNT III

### Bad-Faith Refusal to Defend

65. Plaintiffs restate and reincorporate Paragraphs 1 through 64 as if fully set forth herein.

66. Ohio law recognizes the independent tort of bad faith in the context of the insured/insurer relationship.

67. By selling the Liberty Policies to Red Rood in Ohio, and collecting valuable premiums, Defendant assumed a duty of good faith and fair dealing to Plaintiffs.

68. Liberty owes Red Roof a duty of good faith and fair dealing, which includes an affirmative duty to act in good faith in the investigative handling or processing of an insured's claims and an affirmative duty to act in good faith in the payment of an insured's claims.

69. The covenant of good faith and fair dealing obligated Defendant to refrain from taking any action that would deprive Plaintiffs of the benefit of the Liberty Policies or to cause undue hardship or harm to Plaintiffs.

70. Defendant has breached its duty of good faith and fair dealing owed to Plaintiffs under the Liberty Policies by, but not limited to, the following actions:

   a. Engaging in conduct calculated to further Defendant's own economic interests at the expense of its policyholders, Red Roof;

   b. Unreasonably, inadequately, and improperly investigating Plaintiffs' claims and request for insurance coverage;

   c. Compelling Plaintiffs to institute and litigate this action in order to gain the benefits of the Liberty Policies purchased by Plaintiffs;

   d. Failing to pay the losses suffered by Red Roof; and

   e. Failing to defend Plaintiffs in the Underlying Lawsuits.

71. Liberty has unjustifiably and in bad faith breached its duties to Red Roof by denying coverage outright to Red Roof in the Underlying Lawsuits. Defendant also has failed to abstain from deception and practice honesty and equity in dealing with its policyholders, Red Roof.

72. Liberty's denials of coverage to Red Roof in the Underlying Lawsuits is arbitrary and capricious as shown by its agreement to defend dozens of similar lawsuits brought against the same or similarly constituted name insureds alleging similar conduct and causes of action over the past several years.

73. Liberty's refusal to fulfill its obligations under the Liberty Policies is unreasonable and in bad faith; it is not justified by the facts or law; it is arbitrary and capricious, malicious, reckless, willful, demonstrates ill will, and is wanton; demonstrates a conscious disregard for Red Roof's rights; and has caused Red Roof substantial harm.

74. As a result of Liberty's bad faith refusal to honor its obligations under the Liberty Policies, Plaintiffs have incurred damages in excess of $75,000 to include past and current attorney fees, costs, and expenses to defend their interests in the Underlying Lawsuits, and Red Roof is incurring attorney fees and costs associated with filing this action to establish Liberty's duties and responsibilities under the Liberty Policies.

75. Defendant has acted towards Red Rood with a conscious disregard of Red Roof's rights, and with the intent to vex, injure, and annoy Plaintiffs so as to constitute oppression, fraud, or malice, justifying punitive and exemplary damages in an amount sufficient to punish and make an example of Liberty.

**WHEREFORE**, Red Roof prays for the following relief against Defendant Liberty:

a. An award of damages resulting from Liberty's breach of contract and bad faith in excess of $75,000, including but not limited to reimbursing Red Roof for the costs of defense incurred by Red Roof in the Underlying Lawsuits;

b. A declaration that Liberty has an obligation to defend Red Roof in the Underlying Lawsuits;

c. An order mandating that Liberty immediately defend Red Roof in the Underlying Lawsuits, including the advancement of defense costs as they are incurred.

d. An award of any additional, consequential, and incidental damages and costs suffered by Red Roof because of Liberty's wrongful conduct;

e. Punitive damages;

f. Pre-judgment and post-judgment interest;

g. Red Roof's costs of this lawsuit, including, without limitation, its attorney's fees, expert fees, and actual incurred costs in this matter; and

h. Any other relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Damion M. Clifford*
Damion M. Clifford (0077777)
Gerhardt A. Gosnell II (0064919)
**ARNOLD & CLIFFORD LLP**
115 West Main Street, 4th Floor
Columbus, Ohio  43215
Tele: (614) 460-1600
Fax: (614) 469-1093
Email:  dclifford@arnlaw.com
            ggosnell@arnlaw.com

SHATTUCK ELY (Ga. Bar. No. 249366)
**Fellows LaBriola, LLP** (*pro hac vice admission forthcoming*)
233 Peachtree Street, Suite 2400
Atlanta, Georgia 30306
Telephone: (404) 586-9200
Facsimile: (404) 586-9201
Email: tely@fellab.com

*Counsel for Plaintiffs Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and RRF Holding Company, LLC*

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues alleged herein so triable.

*/s/ Damion M. Clifford*
Damion M. Clifford
