# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RED ROOF INNS, INC.**, *et al.*,

      **Plaintiffs,**      :

      **v.**

**LIBERTY MUTUAL FIRE
INSURANCE COMPANY,**      :

      **Defendant.**

**Case No. 2:25-cv-00352**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC, and RRF Holding Company, LLC (collectively, "Red Roof") filed this lawsuit against Liberty Mutual Fire Insurance Company in response to Liberty's refusal to defend Red Roof in cases filed against it under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. 1591, et seq. ("TVPRA"). Liberty responded, in part, with counterclaims for declaratory judgment against Red Roof.

Red Roof has now filed a Partial Motion for Judgment on the Pleadings (ECF No. 34) and Liberty responded with a Cross-Motion for Partial Judgment on the Pleadings. (ECF No. 36.) Both motions are ripe for decision. For the reasons below, Red Roof's Motion is **GRANTED** and Liberty's Cross-Motion is **DENIED**.

## I.  FACTUAL BACKGROUND

There are eleven pending lawsuits against Red Roof that include a claim under Section 1595(a) of the TVPRA. (*See* ECF No. 34, PAGEID# 2153–54.) The

plaintiffs in those lawsuits allege that they were trafficked for sex at Red Roof hotels and that Red Roof benefited from the crime.

Red Roof sought coverage under its general liability insurance. The applicable commercial general liability policies were issued by Liberty between July 1, 2011, and July 1, 2017. (ECF No. 36, PAGEID# 2335.) Liberty denied coverage, and Red Roof filed this suit.

## II.     LEGAL STANDARD

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion,

> A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

2

## III.  ANALYSIS

The following claims are at issue in both motions for partial judgment on the pleadings: (1) Red Roof's Count I (breach of contract); (2) Red Roof's Count II (declaratory judgment); and (3) the portion of Liberty's Counterclaims I–XII addressing Liberty's duty to defend (declaratory judgment). These claims turn on whether Liberty has a duty to defend Red Roof in eleven underlying lawsuits.

### A.  Liberty has a duty to defend Red Roof under Coverage A of the insurance policies.

Under Ohio law,[1] insurance policies are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). "An insurance contract will only require interpretation if the applicable language is ambiguous—that is, open to more than one interpretation." *Id.* When there is ambiguous language in an insurance contract, such language must be "construed strictly against the insurer and liberally in favor of the insured." *Id.* However, "liberal construction cannot be used to create an ambiguity where one does not exist." *Id.* "If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Id.* at 933.

If an insurance contract provides that an insurer will defend the insured, then the insurer is under a duty to provide a defense so long as the "allegations

---

[1] "When an insurance contract predicated upon diversity jurisdiction is before [the] Court, the substantive law of the forum state" applies. *Kanter v. Travelers Casualty and Surety Co. of Am.*, 477 F. Supp. 3d 637, n. 4 (S.D. Ohio 2020) (Morrison, J.) (citation omitted).

state a claim that potentially or arguably falls within the liability insurance coverage." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 874 N.E.2d 1155, 1160 (Ohio 2007). "An insurer's duty to defend is broader than and distinct from its duty to indemnify." *Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006). "For purposes of determining an insurer's duty to defend, the insured's conduct is evaluated on the basis of the allegations in the complaint against the insured." *Doe v. Pentz*, No. 2:07-cv-00319, 2010 WL 11636090, *3 (S.D. Ohio Mar. 9, 2010) (Watson, J.) (collecting cases). "When an insurer has a duty to defend one claim asserted against its insured in a lawsuit, it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy." *Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001) (Rice, J.). If an insurer owes a duty to defend but fails to honor that obligation, that failure "constitutes a material breach of the contract." *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, 23 (Ohio 1994).

Turning to the insurance contract at hand, Red Roof seeks coverage under both Coverage A and Coverage B. Because the Court finds that Red Roof is entitled to coverage for the underlying lawsuits under Coverage A, it need not address Coverage B.

Coverage A provides insurance for bodily injury and property damage liability. The relevant portion of Coverage A provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

> However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
> (2) The "bodily injury" or "property damage" occurs during the policy period[.]

(ECF No. 18-12, PAGEID# 2064.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*) An "accident" is not defined in the policies; the Ohio Supreme Court has defined the term as "an unexpected happening without intention or design." *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 431 (Ohio 2009) (citing *Rothman v. Metro. Cas. Ins. Co.*, 16 N.E.2d 417 (Ohio 1938)). Thus, "if the injury was not intentionally caused, then it was accidentally suffered." *Id.*

To determine whether Liberty owes a duty to defend, the Court must review the operative complaints in the underlying lawsuits to determine whether those actions fall within the policies' coverage. Each underlying lawsuit includes a civil claim against Red Roof brought under the TVPRA.

The TVPRA is a comprehensive federal law enacted to address human trafficking by, among other things, providing resources and legal mechanisms to support victims. The statutory scheme defines a set of certain crimes and provides a civil remedy to victims of those crimes. Red Roof is not facing any criminal liability in the underlying lawsuits.

The provision of the TVPRA providing for civil remedy states in relevant part:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, under the TVPRA, a victim of sex trafficking may bring (a) a direct civil claim against the perpetrator of her trafficking and (b) a "beneficiary" civil claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

The plaintiffs in the underlying lawsuits seek to hold Red Roof liable as a TVPRA beneficiary. Under this theory, the plaintiffs must allege and prove that Red Roof "(1) 'knowingly benefit[ted] financially or by receiving anything of value' (2) from participation in a venture [and] (3) that [it] 'knew or should have known [the venture] has engaged in' sex trafficking under [the TVPRA]." *Ramsbottom*, 2024 WL 4993391, at *16 (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020)); *see also Powell v. W. Express, Inc.*, No. 3:24-cv-1315, 2025 WL 2306949, at *4 (M.D. Tenn. Aug. 11, 2025) (Crenshaw, J.) (stating that "venture liability" requires a showing that "(1) [the defendant] was part of a 'venture,'(2) [the defendant] knowingly benefitted from participation in the venture; and (3) [the defendant] knew or should have known that the venture would violate § 1591(a)(1)"

(citing *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 797 (S.D. Ohio 2024))).

Liberty argues that the second element of a TVPRA civil claim precludes coverage for Red Roof because that element requires a level of intent that is at odds with an "occurrence" under the policies. For its part, Red Roof argues that the relevant inquiry is not whether "participation in a venture" requires an intent to *act*, but whether it requires an intent to cause *harm*.

### 1. The TVPRA's "participation in a venture" element does not require an intent to cause harm.

The TVPRA does not define "participation in a venture," so the Court will walk the "well-trod path" of statutory interpretation to define the term. *United States v. Fitzgerald*, 906 F.3d 437, 442 (6th Cir. 2018). Terms are given their "ordinary and natural meaning." *Id.* (quoting *United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013)). But if "a word in isolation is susceptible of multiple meanings," the Court also considers the word's "placement and purpose in the statutory scheme." *Id.* (quoting *Miller* at 540). Finally, "working only within the range of 'textually permissible meanings,' [the Court will] consider which of those interpretations would serve, rather than frustrate, the statute's manifest purpose." *Id.* at 442–43 (quoting Antonin Scalia & Bryan A. Garner, Reading Law 57 (2012)).

Starting with the phrase's ordinary and natural meaning, this Court recently held that "participation," as used in the TVPRA, "simply means 'taking part.'" *M.A. v. Wyndham Hotels and Resorts, Inc.*, No. 2:19-cv-00849, 2025 WL 2696500, *18

7

(S.D. Ohio Sept. 22, 2025) (Marbley, J.). Given the term's breadth, it follows that "participation in a venture" can take many forms:

> One way to establish participation is through evidence of a direct association between the trafficking venture and [Red Roof]. A plaintiff, for example, can point to "acts or omissions" that "facilitated the sex trafficking venture," like a hotel renting rooms to people they knew or should have known were engaged in sex trafficking. "In the absence of a direct association," a plaintiff can adduce evidence of "a continuous business relationship" between the trafficking venture and the hotel "such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement."

*Id*. at *14 (internal citations omitted). Because "participation in a venture" can be proven through either a direct or indirect association, this Court rejected the proposition that it requires an "'overt act' in furtherance of the sex trafficking.'" *Id*. The "participation in a venture" element does not require an intent to cause harm.

Turning to the statute's context and structure, both support the conclusion that a defendant can be liable under the civil provisions of the TVPRA without evidence of an intent to cause harm. For example, and by contrast, the TVPRA's criminal provisions define "participation in a venture" as "*knowingly* assisting, supporting, or facilitating" a violation. 18 U.S.C. § 1591(e)(4) (emphasis added). If Congress intended the civil remedy to also have a scienter requirement for "participation," it would have used the criminal provision's definition. But Congress did not, and courts have refused to apply a standard not required by Congress. *See Doe #1*, 21 F.4th 714, 724 (11th Cir. 2021) ("Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)[.]"); *G.G.*, 76 F.4th 544, 558 (7th Cir. 2023) ("We agree with the Eleventh Circuit that we should not import [the

definition in Section 1591] into Section 1595."); *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019) ("[I]t is possible for a defendant to be civilly liable without having violated any of the criminal portions of the [TVPRA], because the statute permits recovery under a civil standard even in the absence of proof of intentional conduct.").

Moreover, the third element of a TVPRA civil claim speaks to the requisite state of mind, i.e., that a defendant "knew" or "should have known" the venture was engaged in sex trafficking. *See Ricchio*, 424 F. Supp. 3d at 193 ("The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence."). If "participation in a venture" was interpreted to include a scienter requirement, then the third element would be superfluous and there would be no need to specify that the defendant must have known or should have known about the sex trafficking (or other TVPRA violations). *See M.A.*, 2025 WL 2696500, at *18 ("To require the kind of blatant, proactive acts [to satisfy 'participation in a venture'] that Defendants propose … would be to discard the 'should have known' language [in the statute].").

Tracking that third element, the plaintiffs in the underlying lawsuits allege both that Red Roof had actual knowledge of sex trafficking and that Red Roof "should have known" about the criminal activity at its hotels. (*See, e.g.*, ECF Nos. 18-1–18-11); *see also Liberty Mut. Fire Ins. Co. v. Red Roof Inns, Inc.*, No. 1:23-cv-02047, 2025 WL 2685867, *5 (N.D. Ga. Aug. 15, 2025) ("In addition to the allegations of intentional participation, [defendant] also alleged that [Red Roof] had

9

constructive knowledge of the sex trafficking and that they 'should have known' of other crimes and happenings on the premises.").

The Court finds that a civil TVPRA claim does not require that the underlying plaintiffs allege or prove that Red Roof intended to cause harm. The underlying lawsuits allege injury caused by an "occurrence" and Red Roof is entitled to a defense under the policies.

### 2.    The doctrine of inferred intent does not apply.

Liberty next argues that, even if a civil claim under the TVPRA does not require an intent to cause harm, this Court can nevertheless infer that Red Roof had an intent to cause harm. Under Ohio law, "the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Allstate Ins. Co. v. Campbell*, 942 N.E.2d 1090, 1099 (Ohio 2010). In *Campbell*, the Ohio Supreme Court explained:

> *Gill* and *Gearing* provide clear examples of cases in which the doctrine applies. In *Gill,* harm was inherent in the defendant's act of murder. Harm was similarly inherent in the acts of sexual molestation in *Gearing*. In each of these cases, the insured could not claim that he was unaware that harm would result from his actions. The doctrine of inferred intent thus applied in those cases, and the insureds' actions were excluded from coverage.
>
> The same cannot be said about the actions in *Swanson* and *Buckeye Union*. In *Swanson,* the act of firing a BB gun from a relatively long distance would not necessarily result in harm. Likewise, an insurance company's bad-faith refusal to settle a claim, as in *Buckeye Union,* does not necessarily result in compensable damages. In both cases, a factual inquiry was necessary to determine whether the insureds' actions were excluded from coverage.

10

*Id*. at 1098. The doctrine does not apply when "the insured's intentional act will not necessarily result in the harm caused by the act." *Id*.

The underlying complaints allege that Red Roof is a beneficiary of sex trafficking; its alleged "intentional act" is "participation in a venture," not the crime of sex trafficking. As discussed, *supra*, "participation in a venture" can take several forms, including renting a room to a sex trafficker. If renting a room to a sex trafficker is what constitutes Red Roof's "participation in a venture" (and the underlying plaintiffs have alleged at least that), then a sex trafficker must still commit a criminal violation of the TVPRA before harm is substantially certain to occur. Put another way, the renting of a room does not necessarily result in harm or compensable damages. The doctrine of inferred intent does not apply.

### 3.    Ohio public policy does not preclude coverage.

Finally, Liberty argues that it need not defend Red Roof in the underlying lawsuits because Red Roof's intentional participation in sex trafficking is "inherently injurious" so that "insulating Red Roof against the result of [its] own conduct is against public interest." (ECF No. 36, PAGEID# 2351.)

"Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts." *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1118 (Ohio 1996). That prohibition extends to "criminal acts," such as those "of sexual misconduct." *Id*. at 1120. But Ohio public policy does not extend so far as to preclude Red Roof from using liability insurance for its alleged negligence related to the act of sex trafficking where, as here, it did not commit the act itself. *See Doe v. Shaffer*, 738 N.E.2d 1243, 1248–49 (Ohio 2000) ("Ohio public policy permits a party

11

to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation.") Accordingly, Ohio's public policy does not apply here.

### 4. Liberty is obligated to defend Red Roof in the underlying lawsuits.

The allegations brought against Red Roof under the TVPRA in the underlying lawsuits constitute an "occurrence" under Coverage A, and neither the doctrine of inferred intent nor Ohio's public policy preclude coverage. Liberty's refusal to provide a defense constitutes material breach of the insurance contract.

Accordingly, Red Roof is entitled to judgment on its Counts I and II and Liberty's Counterclaims I through XII to the extent those counterclaims relate to Liberty's duty to defend.

### B. Liberty is not entitled to discovery.

Liberty argues that if its Cross-Motion is denied, Red Roof's Motion must also be denied so that Liberty can uncover the "true facts" necessary to support a denial of coverage. Put another way, Liberty asks for more time to conduct discovery to uncover an alternative exception that might bar coverage.

"Where a complaint states a claim which is partially or arguably within policy coverage, the insurer has an absolute duty to assume the defense of the action." *Panzica Const. Co. v. Ohio Cas. Ins. Co.*, No. CV-223397, 1996 WL 257470, *7 (Ohio App. Ct. May 16, 1996). "An insurer must provide a defense to all claims based upon the same occurrence if some of the claims are within the coverage of the

insured's policy." *Id*. The underlying lawsuits contain a civil TVPRA claim, and Liberty owes Red Roof a duty to defend those cases.

Implicit in its request for additional time to conduct discovery is that Liberty cannot currently demonstrate that any other exception to coverage applies. Liberty concedes as much, by, for example, arguing that the "expected or intended injury" exception *might* apply. But to rely on that exception, Liberty bears the burden of proving "that the injury itself was expected or intended." *Allstate Vehicle & Prop. Ins. Co. v. Inabnitt*, Nos. CA2021-10-094, CA2021-10-098, 2022 WL 2208799, *4 (Ohio App. Ct. June 21, 2022) (quoting *Physicians Ins. Co. v. Swanson*, 569 N.E.2d 906 (Ohio 1991)). And while perhaps the "true facts" will one day show that Red Roof's "conduct was outside the coverage of the policy," Liberty is obligated to defend Red Roof in the meantime. *Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1124 (Ohio 1987*); see also City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, n. 1 (Ohio 1984) ("[A]n insurer may accept the defense and reserve its right to assert 'at a later time the policy defenses it believes it has.' Nothing prevents the insurer, once the defense is accepted, from utilizing discovery to attempt to clarify the nature of the claim against the insured.").

Liberty's request for additional time to conduct discovery is **DENIED**.

### C.     **Liberty's duty to indemnify and single occurrence counterclaims are not yet ripe.**

Liberty's counterclaims for declaratory judgment (Counterclaims I–XII) ask for a declaration that it is not obligated to indemnify Red Roof under the policies. And in its Counterclaim XIII, Liberty asks for a declaration that Red Roof's alleged

13

actions constitute a single occurrence under the policies. Red Roof asks the Court to stay these counterclaims as not ripe because Red Roof's liability in the underlying lawsuits has not yet been determined.

Ripeness is a jurisdictional question, as this Court "lacks jurisdiction over the subject matter if [a] claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). This Court has "an independent obligation to assure [itself] of [its] own jurisdiction." *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 759 (6th Cir. 2024). "[T]he ripeness doctrine traditionally incorporates both constitutional and prudential elements." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014). The constitutional elements of ripeness encompass traditional parts of the standing inquiry: namely, whether a plaintiff "is threatened with 'imminent' injury in fact." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *accord Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). If a case is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" it is not constitutionally ripe. *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (*quoting Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness is determined "as of the time a party files its complaint." *State v. Yellen*, 539 F. Supp. 3d 802, 812 (S.D. Ohio 2021) (Cole, J.). "If a claim is unripe, federal courts lack subject matter jurisdiction and the claim must be dismissed." *Dealer Comput. Servs., Inc. v. Sub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008) (citing *River City*

14

*Cap., L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007)) (internal citations omitted).

"In order to determine whether a claim is ripe, this court examines (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton*, 298 F.3d at 554.

Applying the ripeness question to Liberty's counterclaims regarding its duty to indemnify Red Roof and whether Red Roof's alleged actions constitute a single occurrence, the Court concludes that these issues are not yet ripe. Here, the underlying lawsuits are ongoing, and it is unknown whether Red Roof will be found liable in any or all those lawsuits. Whether Red Roof will need to be indemnified is contingent on future events that may not occur as anticipated or may not occur at all. *See Ricchio*, 424 F. Supp. 3d at 188 ("As a general matter, the issue of indemnification must await the completing of trial or settlement." (citation omitted)). Likewise, it is unclear whether Red Roof will be responsible for any "bodily injury," so the question of whether such responsibility constitutes a single occurrence is not ripe. Such hypothetical harms are not yet developed for adjudication.

Liberty does not respond to Red Roof's arguments regarding ripeness. Nevertheless, there is no suggestion that Liberty will be harmed if its indemnification and single occurrence counterclaims are dismissed without prejudice until such time that those claims are ripe for review.

15

Accordingly, the indemnification portion of Liberty's Counterclaims I–XII and Liberty's Counterclaim XIII are **DISMISSED without prejudice**.

## IV.    CONCLUSION

For the above reasons, Red Roof's Partial Motion for Judgment on the Pleadings (ECF No. 34) is **GRANTED**. Red Roof is entitled to judgment on its Counts I and II and Liberty's Counterclaims I through XII to the extent those claims relate to Liberty's duty to defend Red Roof in the underlying lawsuits. Liberty's Cross-Motion for Partial Judgment on the Pleadings (ECF No. 36) is **DENIED**.

The indemnification portion of Liberty's Counterclaims I–XII and Liberty's Counterclaim XIII are not ripe for judicial review and are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**